UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rita Mulcahy,

Plaintiff,

v.

Cheetah Learning LLC and
Michelle LaBrosse

Defendants.

Civ. File No. 02-791 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction or Temporary Restraining Order. For the following reasons, the Court grants Plaintiff's Motion for a preliminary injunction[1] in part and denies it in part.

**BACKGROUND**

Plaintiff Rita Mulcahy is a consultant in the field of project management. She owns RMC Project Management, Inc. and RMC Publications, Inc. through which she offers test preparation materials and courses for the Project Management Institute's Project Management Professional ("PMP") Exam. In particular, Mulcahy created the PMP Exam Prep book to help individuals pass the PMP Exam. The PMP Exam is based on a book of industry standards published by the Project Management Institute called The Project Management Body of Knowledge ("PMBOK"). According to Mulcahy, the PMBOK is a

[1] Although Plaintiff's Motion was captioned as either a motion for a temporary restraining order or a preliminary injunction, both parties received notice of the Motion and were heard by the Court. Therefore, the Court will construe the Motion as one for a preliminary injunction. See Fed. R. Civ. P. 65(a).

MAY 10 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

dense and academic book that is difficult to understand. In contrast, Mulcahy contends that her book is concise and easy to understand. Mulcahy owns the copyright in PMP Exam Prep, which is now in its third edition.

Defendant Cheetah Learning LLC ("Cheetah") is a Connecticut company that offers a course called the Cheetah Accelerator Course for the PMP Exam. Like Mulcahy's courses, the Cheetah Accelerator Course is designed to prepare people to pass the PMP Exam. Defendant Michelle LaBrosse is the CEO of Cheetah. She personally supervised the creation of Cheetah's PMP course and course materials.

In March 2002, an instructor for RMC Management, Inc. learned from a former student about Cheetah's exam preparation course. On March 27, 2002, counsel for Mulcahy wrote to Cheetah notifying it that Cheetah's course materials infringed on Mulcahy's copyright in PMP Exam Prep. In response, LaBrosse apparently admitted that the employee who was hired to develop Cheetah's PMP course had "copied all of Rita's work." (Robiner Aff. ¶ 2.) LaBrosse denies that she made such a statement. (LaBrosse Decl. ¶ 23.) Instead, she claims to have said that "various components of Cheetah's materials may have been copied . . . from Mulcahy's book." (Id. ¶ 21.) In any event, LaBrosse attempted to remove the allegedly infringing material. Mulcahy argues that this attempt has failed and that Cheetah's course materials are still infringing on her copyright. Accordingly, Mulcahy filed suit against Cheetah and LaBrosse and now seeks a preliminary injunction preventing Cheetah from using, selling, or otherwise distributing any of the allegedly infringing

materials for the Cheetah Accelerator Course.

Defendants oppose such an injunction, arguing first that this Court lacks personal jurisdiction over them. Defendants alternatively argue that Mulcahy has not established a likelihood of success on the merits. Specifically, Defendants contend that: (1) Mulcahy does not have a valid copyright; (2) even if Mulchay has a valid copyright, Defendants have not infringed on that copyright because its scope is extremely limited; and (3) Mulcahy has only provided evidence relating to Cheetah's February 2002 Candidate Notetaker materials and thus cannot show that she is likely to succeed on a claim that any other materials used in the Cheetah Accelerator Course infringe on her copyright. Defendants also argue that the relative balance of harms in this case militates against the issuance of an injunction because Mulcahy has not provided evidence that she has or will suffer harm as a result of the alleged infringement but Cheetah would suffer severe economic hardship if an injunction issues. Finally, Defendants assert that if the Court grants a preliminary injunction, it should narrow the scope of the injunction and force Mulcahy to post a bond of approximately $750,000.

## DISCUSSION

### A. Personal Jurisdiction

If a defendant challenges a federal court's in personam jurisdiction, the plaintiff has the burden of presenting a prima facie case that such jurisdiction exists. Burlington Indus., Inc. v. Maples Indus., Inc. 97 F.3d 1100, 1102 (8th Cir. 1996); Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). In determining whether

plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Digi-Tel Holdings, Inc., 89 F.3d at 522; Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 995 (D. Minn. 1998).

A court must test the reach of its personal jurisdiction by determining first if the requirements of the forum state's long arm statute are met and then by determining if the requirements of federal due process are met. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Dotmar, Inc. v. Niagra Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing the reach of Minnesota's long-arm statute); Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). As the Supreme Court has noted, there are no "talismanic" formulas to personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. at 462, 485 (1985). Nevertheless, it is clear that the defendant's "contacts" with the forum state must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. See Id. at 475; Hanson v. Denkla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, Inc.,

89 F.3d at 522. In other words, the defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Courts may assert either general or specific jurisdiction over defendants. General personal jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, whether or not the cause of action has any relationship to the defendant's activities within the State. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). This standard is met for citizens of the forum state; for others, the standard is exacting and difficult to meet. See Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (noting that general jurisdiction is falling into growing disfavor as the doctrine of specific jurisdiction broadens). Singular or isolated activities in a state are not sufficient for general jurisdiction, nor does continuous activity of some sort necessarily satisfy the requirement. Id. at 1199; see Int'l Shoe, 326 U.S. at 317-18. The contacts must be substantial. See Nichols, 991 F.2d at 1999 (quoting Int'l Shoe, 326 U.S. at 318)). Specific jurisdiction, on the other hand, is appropriate if a defendant purposely directed activities at residents of the forum and the litigation results from "alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citing Helicopteros, 466 U.S. at 414).

In this case, Mulcahy argues that the Court has both general and specific personal jurisdiction over Defendants because Cheetah has a substantial number of contacts with

Minnesota that relate to the claims at issue. Specifically, Mulcahy avers that Cheetah advertised, until very recently, that it maintained an office in Minnesota; lists Minnesota as one of the locations where the Cheetah Accelerator Course is offered and planned to teach a course in Minneapolis on May 13-17, 2002; employs a Minnesota resident as one of its instructors; and actively and regularly recruits Minnesota residents for its course through internet advertising and maintenance of an interactive website.

Likewise, Mulcahy contends that LaBrosse has a number of contacts with Minnesota that are closely connected to the copyright infringement alleged in this case. In particular, Mulcahy highlights the fact that LaBrosse personally came to Minnesota to promote herself as an expert on the subject of project management. In February 2002, LaBrosse spoke to the Minnesota Project Management Institute. The advertisement for this speech featured Cheetah Learning's logo and website information.

Viewing the evidence and Mulcahy's factual statements in the light most favorable to her, the Court finds that specific personal jurisdiction exists in this case. The fact that Cheetah solicited, both through LaBrosse's speech and over the internet, Minnesota residents to participate in the Cheetah Accelerator Course is persuasive. Additionally, although Cheetah ultimately decided not to offer a course in May 2002 in Minneapolis, Mulcahy has provided evidence that Cheetah planned and advertised such a course. Because the copyright infringement at issue arises from or is directly related to the materials utilized in the Cheetah Accelerator Course, the Court finds that, for the purposes of Mulcahy's current Motion,

Defendants are subject to the specific personal jurisdiction of the Court.

### B. Preliminary Injunction

A temporary restraining order or preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986).

It is well-established that, although no single factor is determinative, the likelihood of success on the merits predominates in a copyright infringement case. Taylor Corp. v. Four Seasons Greetings LLC, 171 F. Supp. 2d 970, 972 (D. Minn. 2001). If the movant can establish a likelihood of success on the merits, irreparable harm is presumed. Id. (citing West Pub. Co., 799 F.2d at 1222).

#### 1. Likelihood of Success on the Merits

"To prevail on a copyright infringement claim, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of its copyrighted work by defendant." Taylor, 171 F. Supp. 2d at 972 (citing Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992)). A plaintiff is deemed to own a valid copyright if he or she can show that the

material is original, the material can be copyrighted, and all the statutory formalities have been complied with. Id. (citations omitted). A certificate of registration constitutes prima facie evidence of the validity and ownership of a copyright. Id. (citations omitted). Copying is established either "by direct evidence of copying or by circumstantial evidence establishing that the defendant had access to the copyrighted work and that there is a substantial similarity between the two works at issue." United States v. Washington Mint, LLC, 115 F. Supp. 2d 1089, 1098 (D. Minn. 2000).

a. Ownership of a Valid Copyright

It is undisputed that Mulcahy has a certificate of registration for all three editions of her PMP Exam Prep. Accordingly, she is entitled to a rebuttable presumption that the copyright is valid and owned by her. See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc., 114 F. Supp. 2d 856, 863 (D. Minn. 2000) (citations omitted). Defendants, however, argue that the presumption should not hold in this case because Mulcahy's PMP Exam Prep is a derivative of the PMBOK but was not registered as a derivative work. See Gracen v. Bradford Exchange, 698 F.2d 300, 302 (7th Cir. 1983) (stating that the creator of a derivative work is not entitled to copyright protection where she lacked authority to create a derivative work); Pamfiloff v. Giant Records, Inc., 794 F. Supp. 933, 938 (N.D. Cal. 1992) (same). Mulcahy's failure to demonstrate that she had authorization to create a derivative work, Defendants contend, undermines her claim to a valid copyright.

Defendants' shrewd attempt to reverse the presumption created by a certificate of

registration is unavailing. First, the mere allegation that the PMP Exam Prep is a derivative work, standing alone, is insufficient to shift the burden of proving the validity of the copyright back to Mulcahy. Even if Mulcahy's book is a derivative work, in light of the certificate of registration, it is not Mulcahy's burden to demonstrate that she had authorization to create such a derivative work. Rather, Defendants must demonstrate that such authorization is missing. Although Defendants may be able to adduce sufficient evidence that the PMP Exam Prep is a derivative based on the PMBOK and that Mulcahy was not authorized to create such a derivative, they have not done so at this stage. Therefore, the Court finds that, for the purposes of this Motion, Mulcahy is presumed to have ownership of a valid copyright for the PMP Exam Prep.

b. Copying

This is a somewhat unusual case because Mulcahy contends that there is direct evidence of copying. According to Mulcahy's counsel, LaBrosse admitted that the person hired to create the materials for the Cheetah Accelerator Course had copied Mulcahy's work. Although LaBrosse denies that she made such a statement, she admits that she said that Cheetah's course materials "may have been copied . . . from Mulcahy's book." (LaBrosse Decl. ¶ 21.) For the purposes of this Motion, the Court finds that such a statement sufficiently establishes that Mulcahy is likely to succeed on her claim that Defendants copied her work.

Even if Mulcahy cannot establish direct evidence of copying, however, it is likely that

she can show circumstantial evidence of copying. As previously noted, in order to prove copying through circumstantial evidence, Mulcahy must show that: (1) Defendants had access to the PMP Exam Prep; and (2) the allegedly infringing materials are substantially similar, both in ideas and expression, to the PMP Exam Prep. Taylor, 171 F. Supp. 2d at 974. To determine if substantial similarity exists, the Court must first analyze the objective similarity of the general ideas in the two works. Id. at 975 (citing Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). If there is objective similarity between the general ideas of the two works, then the Court must analyze the works intrinsically to determine whether there is similarity of expression. Taylor, 171 F. Supp. 2d at 975. Similarity of expression is evaluated according to the response of the ordinary, reasonable person to the two works. Id. In other words, the Court must ascertain whether a reasonable person would find that "the accused work has captured the 'total concept and feel' of the copyrighted work." Animal Fair, Inc. v. AMFESCO Indus., Inc., 620 F. Supp. 175, 188 (D. Minn. 1985) (citations omitted).

In this case, Defendants concede that they had access to the PMP Exam Prep. The central question, then, is whether Cheetah's allegedly infringing materials are substantially similar to the PMP Exam Prep. Mulcahy contends that the Cheetah Candidate Notetaker is extrinsically similar to Mulcahy's PMP Exam Prep. As Mulcahy points out, both books are training materials for the same project management exam and are handed out in conjunction with a live training course; both use a combination of text, examples, and charts to relay

information; and both follow the general structure of the PMBOK. Defendants urge the Court to find that these extrinsic similarities would exist between any materials that are designed to prepare individuals for the PMP Exam. Accordingly, Defendants contend that these similarities cannot buttress Mulcahy's claim that there is circumstantial evidence of copying.

Defendants' argument is untenable. The extrinsic analysis focuses only on the general idea or character of the two works in question. To this end, courts may consider "criteria such as the type of artwork involved, the materials involved, the subject matter and the setting for the subject." Taylor, 171 F. Supp. 2d at 975. In Taylor, for instance, the court found that the defendant's greeting cards shared common themes, techniques, and concepts with the plaintiff's greeting cards. The fact that these similarities are common throughout the greeting card industry did not undermine the fact that the cards at issue in the case were extrinsically similar. In this case, the works at issue serve the same general function through the same general means and relate to the same subject. They are, therefore, extrinsically similar. It is irrelevant that other hypothetical preparation materials for the PMP Exam might also be extrinsically similar to the materials at issue in this case.

Similarly, the Court finds that it is likely that Mulcahy can show that the Cheetah Candidate Notetaker and the PMP Exam Prep are intrinsically similar. Based on the evidence presented to the Court, it is likely that a reasonable observer would recognize substantial similarities between the two works. Indeed, it appears that there are entire

sections of the PMP Exam Prep that are identical or nearly identical to sections of the Candidate Notetaker. Although there are also differences between the works, it is axiomatic that "complete identity is not required" to demonstrate substantial similarity. Id. at 976.

Defendants contend, however, that even if Mulcahy can show that the works are substantially similar, these similarities cannot be found to violate Mulcahy's copyright. Defendants argue that "[u]nder the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). Likewise, "[u]nder the scenes a faire doctrine, copyright protection may be precluded where the work contains features which are indispensable or standard for such a work." Taylor, 717 F. Supp. 2d at 973. According to Defendants, the similarities between the Candidate Notetaker and the PMP Exam Prep reflect the expression inherent in any attempt to summarize the PMBOK and prepare individuals for the PMP Exam. To support this claim, Defendants compare a few examples from the Candidate Notetaker and the PMP Exam Prep with the PMBOK and note that all three use many of the same words and expressions.

At this stage of the litigation, the Court disagrees with Defendants. The crux of Defendants' argument is that "copyright protection may be denied where the idea is inseparably tied to the expression of that idea." Id. Here, Defendants have not provided sufficient evidence or argument that the particular ideas contained in the PMBOK and needed to pass the PMP Exam can only be expressed in one, or a very limited number, of

ways. To the contrary, based on the evidence provided, the Court doubts that it is necessary to use precisely the same language, in the same order, to express these ideas.

Thus, there is a substantial likelihood that Mulcahy can succeed on her claim that the Cheetah Candidate Notetaker is infringing on her copyright. Accordingly, as previously mentioned, irreparable harm to Mulcahy is presumed. Because Mulcahy has provided no evidence relating to the alleged infringement of other materials used by Cheetah, however, the Court will not, at this time, address the likelihood that she may succeed on an infringement claim relating to these materials.

### 2. Balance of Harms and Public Interest

Generally, the balance of harms is "regarded as insignificant in a copyright infringement action." Taylor, 171 F. Supp. 2d at 977 (citing E.F. Johnson Co. v. Uniden Corp. of Am., 623 F. Supp. 1485, 1491 (D. Minn. 1985)). "A willful infringer which seeks to profit by copying others' creative ideas should not be heard to complain that its interest will be disturbed by an injunction." E.F. Johnson Co., 623 F. Supp. at 1504. Although the Court recognizes that Cheetah will suffer some inconvenience and possible monetary loss as a result of enjoining it from using the Candidate Notetaker, this harm is not substantial enough to outweigh the harm that Mulcahy has presumptively suffered.

Finally, "[i]t is virtually axiomatic that the public interest [is] only . . . served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." E.F.

Johnson, 623 F. Supp. at 1491. Accordingly, the Court finds that all of the Dataphase factors tip in favor of granting Mulcahy's Motion insofar as it applies to the Cheetah Candidate Notetaker.

**CONCLUSION**

The Court is aware that both parties have business exigencies that demand swift resolution of this dispute. Accordingly, the Court encourages the parties to attempt to settle this matter as soon as possible, whether through informal means or through the offices of the Magistrate Judge. At this stage of the litigation, however, the Court finds that, based on the limited evidence before it, Mulcahy is likely to succeed on the merits of her copyright infringement claim insofar as that claim relates to Cheetah's Candidate Notetaker. The Court also finds that all of the requisite factors tip in favor of granting Mulcahy's Motion to the extent that it relates to the Candidate Notetaker. Although Mulcahy's examples of infringement are taken from the February 2002 version of the Candidate Notetaker, the Court is enjoining Defendants from using, publicly displaying, selling, or otherwise distributing any version or parts of the Candidate Notetaker.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion (Clerk Doc. No. 2) is **GRANTED in part and DENIED in part** as follows:

a. Defendants are enjoined and restrained from using, publicly displaying, selling, or otherwise distributing any version or parts of the Cheetah

Candidate Notetaker for 90 days following the date of this Order;

b. The Court does not enjoin, at this time, the use of any other materials used in the Cheetah Accelerator Course; and

c. Pursuant to Fed. R. Civ. P. 65, Plaintiff shall post a bond in the amount of $10,000 to secure this Preliminary Injunction. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

Dated: May 10, 2002

Paul A. Magnuson
United States District Court Judge