UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rita Mulcahy,

Plaintiff,

v.

Cheetah Learning LLC and
Michelle LaBrosse,

Defendants.

Civ. File No. 02-791 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss for lack of personal jurisdiction. For the reasons that follow, the Court grants the Motion in part and denies it in part.

**BACKGROUND**

Plaintiff Rita Mulcahy is a consultant in the field of project management. She offers test preparation materials and courses for the Project Management Institute's Project Management Professional ("PMP") Exam. In particular, Mulcahy wrote a book entitled PMP Exam Prep to help individuals pass the PMP Exam. Mulcahy owns the copyright for PMP Exam Prep, which is now in its third edition.

Defendant Cheetah Learning LLC ("Cheetah") is a Connecticut company that offers a course called the Cheetah Accelerator Course for the PMP Exam. Like Mulcahy's courses, the Cheetah Accelerator Course prepares students to pass the PMP Exam. Defendant

SEP 0 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Michelle LaBrosse is the CEO of Cheetah. She personally supervised the creation of Cheetah's PMP course and course materials.

In March 2002, an instructor for Mulcahy's classes learned from a former student about Cheetah's exam preparation course. On March 27, 2002, counsel for Mulcahy wrote to Cheetah asserting that Cheetah's course materials, and in particular the Cheetah Notetaker, infringed on Mulcahy's copyright in PMP Exam Prep. In response, Mulcahy claims that LaBrosse admitted that the employee who was hired to develop Cheetah's PMP course had "copied all of Rita's work." LaBrosse denies that she made such a statement. Instead, she claims to have said that "various components of Cheetah's materials may have been copied . . . from Mulcahy's book." In any event, LaBrosse attempted to remove the allegedly infringing material. Mulcahy argues that this attempt failed and that Cheetah's course materials are still infringing on her copyright. Mulcahy subsequently filed suit against Cheetah and LaBrosse.

Mulcahy moved for a preliminary injunction, and at the last moment, Defendants challenged personal jurisdiction. Preliminarily, the Court determined that it had personal jurisdiction, and on May 10, 2002, it entered a 90-day injunction prohibiting Cheetah from using any version of the Cheetah Notetaker. Defendants now reassert their argument that the Court lacks personal jurisdiction over them.

Mulcahy maintains that this Court has specific personal jurisdiction over both Cheetah and LaBrosse because: (1) Cheetah represented that it maintained an office in Minnesota; (2)

Cheetah was actively selling seats for a Cheetah Accelerator Course to be held in Minnesota on May 13-17, 2002; (3) the marketing for this course took place on an interactive website that reached Minnesota residents; (4) a "Cheetah team member" and certified instructor for the Cheetah Accelerator Course resides in Minnesota; (5) LaBrosse came to Minnesota to speak on the subject of project management generally; (6) LaBrosse's speech was advertised in a newsletter published by the Minnesota Chapter of the Project Management Institute; and (7) LaBrosse touts her relationship with companies headquartered in Minnesota. Additionally, Mulcahy argues that, regardless of their contacts with Minnesota, personal jurisdiction over Cheetah and LaBrosse exists because they intentionally infringed on the copyright of a Minnesota resident.

**DISCUSSION**

To defeat a motion to dismiss for lack of subject matter jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). The facts must be viewed in the light most favorable to the nonmoving party and all factual disputes are resolved in her favor. Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

A court tests the reach of its personal jurisdiction by determining first if the requirements of the forum state's long arm statute are met and then by determining if the requirements of federal due process are met. Soo Line R.R. Co. v. Hawker Siddeley Canada,

Inc., 950 F.2d 526, 528 (8th Cir. 1991). Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Domtar, Inc. v. Niagara Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing the reach of Minnesota's long-arm statute); Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995).

Due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).[1] As the Supreme Court has noted, there are no "talismanic" formulas to personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485 (1985). Rather, courts must consider "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). It is not necessary for the defendant to be physically present in the forum state. Burger King, 471 U.S. at 476. The defendant's contacts with the forum, however, must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. Id. at 475; Hanson v. Denkla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, 89 F.3d at 522. In other words, the defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled

[1] Because Mulcahy's action is predicated on federal law, the Court must examine Defendants' due process rights under the Fifth Amendment rather than the Fourteenth Amendment. The standards, however, are the same under both clauses. Dakota Indus., 946 F.2d at 1389 n.2.

into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In determining whether a defendant's contacts are sufficient for an exercise of personal jurisdiction, a court must consider all of those contacts with the forum in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995); Minnesota Mining & Mfg. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1122 (D. Minn. 1996) (Tunheim, J.). In a case with multiple defendants, however, each defendant's contacts with the forum state must be assessed individually. Rauh Rubber, 943 F. Supp. at 1122 (citing Calder v. Jones, 465 U.S. 783, 790 (1984)).

Courts may exercise either general or specific personal jurisdiction over defendants. See Digi-Tel Holdings, 89 F.3d at 523 n.4; Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994). In this case, Mulcahy does not argue that Defendants' contacts with Minnesota are so "continuous and systematic" that they may be sued in Minnesota over any controversy. Accordingly, the exercise of general personal jurisdiction over Defendants is not proper. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Nevertheless, the Court may exercise specific personal jurisdiction over Defendants if they purposely directed activities at residents of Minnesota and the litigation results from "alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472-73 (citing Helicopteros, 466 U.S. at 414).

**A. Specific Jurisdiction over Cheetah**

Defendants urge the Court to find that none of Cheetah's activities arise out of or relate to any of its alleged contacts with Minnesota. They contend that because Cheetah never presented the Cheetah Accelerator Course for the PMP in Minnesota and has not otherwise sold, copied, distributed, or publicly displayed the allegedly infringing materials in Minnesota, specific jurisdiction is not proper in this state. Relying on Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1341 (8th Cir. 1983), Defendants argue that Cheetah's intent to hold a course in Minnesota featuring the allegedly infringing materials is irrelevant for the purposes of personal jurisdiction. The key, they argue, is that no such course was actually held. Similarly, Defendants contend that the mere fact that Cheetah advertised the Cheetah Accelerator Course over the Internet and these advertisements reached Minnesota residents is insufficient to warrant an exercise of personal jurisdiction over it.

The Court disagrees with both of these arguments. Due Process protects non-forum residents from being subject to the binding judgments of a forum with which they have not established any meaningful contacts, ties, or relations. Burger King, 471 U.S. at 471-72. In this case, Cheetah purposefully established meaningful contacts and relations to Minnesota when it advertised and then sold seats for a Cheetah Accelerator Course that was to be held in Minneapolis.

Contrary to Cheetah's assertion, its activities are qualitatively different than those of

the defendant in Land-O-Nod. There, a Minnesota furniture dealer had attended a trade show in Dallas, Texas and ordered two mattresses from a representative of the defendant that allegedly infringed on the plaintiff's trademark. Land-O-Nod, 708 F.2d at 1341. The defendant's representative also provided the Minnesota dealer with advertising that could be used to promote the sale of the product. Id. The Minnesota dealer's order was never filled, however, and the mattresses were never advertised in Minnesota. Id. Accordingly, the court held that there was no relationship between the plaintiff's trademark infringement claim and defendant's activities in Minnesota. Id. In contrast, Cheetah not only advertised the course featuring the allegedly infringing materials in Minnesota, but it actively sold seats for such a course to this state's residents. Although Cheetah canceled this course at the last moment, unlike the defendant in Land-O-Nod, Cheetah did more than merely plan to introduce its allegedly infringing product into Minnesota.

Cheetah's active solicitation and sales in this state of the course featuring the materials at issue are sufficient to warrant an exercise of specific personal jurisdiction over it. Alternatively, as is discussed in more detail below, Cheetah is also subject to the personal jurisdiction of this Court pursuant to the so-called "effects test" first articulated by the Supreme Court in Calder v. Jones and later refined by the Eighth Circuit in Dakota Industries.

### B. Specific Jurisdiction over LaBrosse

Defendants also contend that LaBrosse's contacts with Minnesota do not relate to or

arise from Mulcahy's claims. The Court agrees. LaBrosse's contacts with this state are only generally related to the field of project management as whole. Mulcahy has come forward with no evidence to suggest that LaBrosse's one-day speech in Minnesota had anything to do with the allegedly infringing materials, let alone the PMP Exam, and Mulcahy has provided nothing to suggest that any relationship that LaBrosse may have with Minnesota companies relates, in even a general way, to the allegedly infringing materials or the PMP Exam. Accordingly, the Court does not have specific personal jurisdiction over LaBrosse.

### C. Jurisdiction Pursuant to the Effects Test

Mulcahy argues that rather than apply the traditional test for specific personal jurisdiction discussed above, the Court should employ the Calder v. Jones effects test to find that personal jurisdiction over Cheetah and LaBrosse exists. Pursuant to the effects test

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were "uniquely" or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered–and which the defendant knew was likely to be suffered–there.

Zumbro, Inc. v. Cal. Natural Prods., 861 F. Supp. 773, 782-83 (D. Minn. 1994) (Kyle, J.). In this case, Mulcahy argues that she has adduced sufficient evidence to support a prima facie showing that Cheetah and LaBrosse intentionally infringed on her copyright and knew that she was a Minnesota resident. Accordingly, Mulcahy asserts that Defendants aimed their tortious conduct at Minnesota and knew that the brunt of the harm from that conduct would be felt here.

The mere fact that Mulcahy has alleged that Defendants committed an intentional tort against her, however, does not necessarily justify haling them into a Minnesota Court. "[Calder] did not set forth a per se rule that the allegation of an intentional business tort alone is sufficient to confer personal jurisdiction in the forum where the plaintiff resides." Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 262 (3d Cir. 1998) (citing Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1078 (10th Cir. 1995)); see also Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir. 1992); United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001); Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001); Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000); Wallace v. Herron, 778 F.2d 391, 394 (7th Cir. 1985).

Although courts "have struggled somewhat with Calder's import," Bancroft & Masters, 223 F.3d at1087, it is clear that the effects test does not entirely supplant minimum contacts analysis. Thus, in Hicklin Eng'g, the Eighth Circuit found that although the defendants' alleged nefarious conduct might have affected the plaintiff in Iowa, "absent additional contacts, this effect alone [was] not . . . sufficient to bestow personal jurisdiction [in Iowa]." 959 F.2d at 739; see Dakota Indus., 946 F.2d at 1391 (stating that in relying on Calder the Eighth Circuit was not abandoning the minimum contacts test); Swiss Am. Bank, 274 F.3d at 624 (holding that Calder addressed purposeful availment rather than relatedness and therefore could not be used to establish personal jurisdiction in a case where there were no contacts, other than the effects of the alleged tort, with the forum); Imo Indus., 155 F.3d

at 265 (stating that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis"). "'[T]he key to Calder is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum.'" Allred v. Moore & Peterson, 117 F.3d 278, 286-87 (5th Cir. 1997) (quoting Wallace, 778 F.2d at 395).

In this case, as has been discussed, LaBrosse has no relevant contacts to Minnesota. Thus, pursuant to Hicklin Engineering, she cannot be subject to the personal jurisdiction of this Court merely because she allegedly infringed on Mulcahy's copyright. Even if the effects of an intentional tort standing alone could be sufficient under some circumstances to justify an exercise of personal jurisdiction over a defendant, the instant case does not present such circumstances. Neither the allegedly infringing materials in this case nor the harm from those materials is exclusively or primarily centered in this forum. Because LaBrosse has no other contacts with Minnesota that relate to Mulcahy's claims, the Court declines to rely on the effects test to exercise personal jurisdiction over her.

Cheetah, on the other hand, has contacts with this state that relate to Mulcahy's claim of copyright infringement. In light of Mulcahy's allegation that Cheetah intentionally infringed on her copyright and knew that Mulcahy was a resident of Minnesota, the effects test bolsters the Court's finding that Cheetah has purposefully directed its activities at Minnesota such that the exercise of jurisdiction is proper.

## CONCLUSION

For the foregoing reasons and based on all the files, records, and proceedings herein, the Court finds that it has personal jurisdiction over Defendant Cheetah Learning LLC but does not have personal jurisdiction over Defendant Michelle LaBrosse. Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for lack of personal jurisdiction (Clerk Doc. No. 27) is **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiff's claims against Defendant Michelle LaBrosse are **DISMISSED without prejudice**; and

2. Plaintiff may proceed with her claims against Defendant Cheetah Learning LLC.

Dated: September 4, 2002

Paul A. Magnuson
United States District Court Judge