UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Rita Mulcahy,

Plaintiff,

vs. ORDER

Cheetah Learning LLC
and Jeff Schurrer,

Defendants. Civ. No. 02-791 (PAM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 27th day of June, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Plaintiff, Rita Mulcahy ("Mulcahy"), which challenges the Defendant's Highly Confidential Designations of certain materials under the Protective Order that was entered in this action, upon the Defendant Cheetah Learning LLC's ("Cheetah's") Motion to Compel Production of Documents, and the informal Motion to Compel non-party, RMC Project Management, Inc.'s ("RMC's") compliance with a Subpoena.

A Hearing on the Motions was conducted on March 20, 2003, at which time, Mulcahy, and RMC, appeared by Rita A. O'Keefe, Esq.,

FILED JUN 27
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

and the Defendants appeared by Christopher K. Larus, Esq. For reasons which follow, we grant, in part, Mulcahy's Motion Challenging Highly Confidential Designations, and we grant Cheetah's Motion to Compel Production of Documents, and its Motion to Compel Compliance with Subpoena.[1]

II. Factual and Procedural Background.

Mulcahy is the President and founder of RMC, which is a corporation that teaches a preparatory course for the Project Management Professional ("PMP") examination. The course is expressly designed to prepare students to take th Project Management Institute's PMP Certification Examination. Cheetah, which also offers preparatory courses for the PMP examination, is a direct competitor of RMC. The Defendant Jeff Schurrer is one of Cheetah's instructors. Mulcahy has published a book entitled PMP Exam Prep -- three editions of which have been copyrighted -- and this action arises out of her allegation that Cheetah utilized materials from those books in its preparatory course, and claimed that material as its own. Accordingly, Mulcahy commenced this suit for copyright infringement, and has also advanced claims of false advertisement or,

[1]During the course of the Hearing, we expressed our rulings on certain of the issues, and this Order explains, in greater detail than previously provided, the bases for those rulings.

more particularly, "reverse palming off," under the Lanham Act. Title 15 U.S.C. §1051 et seq.

III. Discussion.

A. Mulcahy's Motion Challenging Cheetah's Highly Confidential Designations.

Mulcahy's Motion challenges Cheetah's designation of certain materials as Highly Confidential, under the stipulated Protective Order which governs the production of documents in this action.[2] In pertinent part, the Protective Order provides as follows:

> Any person may designate as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS" EYES ONLY" information that it deems so competitively sensitive that it should not be learned by its competitors. Such information shall be disclosed only to person, described in paragraphs 4(a), 4(c), 4(d), 4(e), and 4(f), and to experts retained for this litigation who are not employees of or regular consultants to a party. Such information shall not be disclosed to a party or its agents, other than agents described in the preceding sentence.

Protective Order, at ¶6.

Mulcahy complains that Cheetah designated virtually every document, that it has produced, as Highly Confidential, and that this desig-

---

[2]Before its issuance, there was a single dispute as to the Protective Order -- namely, whether the Plaintiff's husband, who served as counsel for RMC, should be permitted access to those documents which Cheetah had designated as highly confidential. We ruled that he could not, and entered a Protective Order which reflected that result.

nation is largely improper, because most, if not all, of the documents are publically available, are available to Cheetah's students, or were created from publically available sources -- including Mulcahy's own written materials. According to Mulcahy, by applying that wholesale designation of its documents, Cheetah has effectively precluded Mulcahy from assisting her counsel in discovering the full extent of Cheetah's copyright infringement, as only counsel and staff, court reporters, retained experts, persons who drafted the document, and certain expressly permitted persons, are entitled, under the terms of the Protective Order, to review documents of that classification.

For its part, Cheetah maintains that its designations are wholly proper, as it claims that the documents "go to the heart of the competition between the parties" and, as such, are "so commercially sensitive," that they "should not be learned by its competitors." Further, Cheetah asserts that the Plaintiff is not prejudiced by that designation, because her attorney, and her retained expert, still have access to the materials.

Mulcahy's Motion focuses on four different documents, including various drafts, and versions, of those documents.[3] The first

[3]Mulcahy had also complained about Cheetah's designation, as Highly Confidential, of its PMP Exam Preparation Toolkit, which she describes as a marketing document designed to interest prospective (continued...)

is the PMBOK Primer, which is a document explaining Cheetah's PMP examination preparatory course, that is distributed to students who had enrolled in Cheetah's classes.[4] The second is the Candidate Notetaker ("Notetaker"), which is the course material used by the students in Cheetah's classes. Cheetah's students are permitted to take the Notetaker with them when the class is completed. The Notetaker is the primary target of Mulcahy's copyright infringement claim, and Cheetah has been enjoined from using that product, pending resolution of this case, or further Order of the Court. See, Docket No. 42.

The third document is the Facilitator's Guide ("Guide"), which is the document utilized by Cheetah instructors, for teaching the PMP examination preparatory course. Mulcahy alleges that the Guide contains much of the same material as the Notetaker, and that, because the Notetaker was substantially derived from earlier versions of the Guide, that the earliest incidents of copyright infringement are likely to be found in the Guide. The Guide is distributed only to Cheetah instructors, who sign confidentiality

(...continued)
students in Cheetah's courses. In its response to the Plaintiff's Motion, however, Cheetah withdrew that designation and, therefore, that portion of Mulcahy's Motion has been rendered moot.

[4]This material has now been revised, and renamed as the Cheetah Accelerator Course, Course Preview.

agreements pledging to keep the materials private. Cheetah claims that the Guide provides specific information about its teaching techniques, as well as various forms of financial information.

The final category of disputed materials are the practice examination questions that are employed by Cheetah in its course. There is some dispute about the extent to which Cheetah's students are permitted to retain those materials. Initially, it was asserted that Cheetah's students were permitted to keep the materials during the week of the course, but not upon its completion. However, by letter dated March 25, 2003, Mulcahy presented the Court with a document which appeared to show that, at least as of April 4, 2002, the students were permitted to keep the daily examinations, and final examination questions, but not the "supplemental test questions," which had to be collected at the end of the course. What is undisputed, however, is that the students were permitted to take the examination questions home with them, in the evening, during the length of the course.

Cheetah maintains that, under the Protective Order in this case, such materials need not true "trade secrets" in order to warrant a Highly Confidential designation, as they need only be commercially sensitive materials that should not be disclosed to its competitors. According to Cheetah, the four categories of materials fit within that description, because they contain Chee-

tah's "proprietary teaching techniques and cutting-edge teaching materials," which should not be divulged to a direct competitor. However, as we explained at the time of the Hearing, while Cheetah need not show that the material is a "true" trade secret -- such as a secret formula -- in order for a Highly Confidential designation to properly attach, it must make some showing that the materials are proprietary, or that the disclosure of the materials to a competitor would be detrimental, and that showing required some objective evidence of commercial sensitivity, such as would be relected by efforts to maintain the confidentiality of the materials.

As to the PMBOK Primer, and the Candidate Notetaker, we see no objective indicia that the materials are so proprietary, or commercially sensitive, as to warrant a Highly Confidential designation. It is undisputed that the materials are provided to Cheetah's students, who may take the materials with them at the end of the course. Although Cheetah asserts that it instructs its students not to share the information with others, beyond that mere verbal advisory, Cheetah admittedly takes no steps to prevent such disclosures. If Mulcahy could obtain access to those materials by enrolling in a Cheetah course, or by asking one of Cheetah's students for the documents, we see no legitimate purpose in precluding her from accessing those materials through discovery. Stated

otherwise, we are confident that, if the materials were competitively sensitive, Cheetah would have had the students sign an agreement, or would have imposed some other mechanism, that would expose the students to some significant, detrimental effect, if disclosure of the materials were made to third parties. No such mechanism was in place. Thus, we find the Highly Confidential designation, as to those materials, to be improper, and we direct that they be redesignated.

As to examination questions, we are faced with a more difficult issue. According to the Record presented, it appears that Cheetah does take some steps to ensure that these materials are not publically distributed, in that, at least as to some of the examination questions, the students are precluded from retaining the materials at the end of the course. Once again, however, we find that Cheetah has failed to take steps which are a sufficient indicia of the competitive sensitivity of their examination questions, to find that a Highly Confidential designation is proper. Despite the additional steps taken by Cheetah to protect these materials, the students were allowed to take the questions home with them for the duration of the course. If of a mind to do so, the Plaintiff could simply have accessed those materials by enrolling in Cheetah's course, or by requesting a Cheetah student to photocopy the materials for her, on an evening when the student had

those questions at home. Therefore, as with the PMBOK Primer, and the Candidate Notetaker, we find no practical purpose is served by shielding those materials from the Plaintiff's view, and we direct Cheetah to redesignate those materials.

We reach a different finding, however, as to the Guide, since Cheetah has shown that it has taken significant measures to treat that document as commercially sensitive, since it only distributes the document to its instructors, who are required to sign confidentiality agreements, which obligate no disclosure of the contents of the Guide. Further, Cheetah has asserted that the Guide contains "all of Cheetah's unique and highly proprietary accelerated learning techniques, including diet, exercise, collection of student metrics, color recognition, pneumonics, and psychoacoustics," and "sensitive and proprietary financial information," such that its disclosure to Cheetah's direct competitor, would be detrimental. We accept that Cheetah's teaching techniques, and its manner of presenting its instructional materials, have a proprietary value, which are entitled to some protection, particularly given the steps that Cheetah has taken to protect the Guide from public dissemination. Accordingly, to the extent that Mulcahy challenges the designation of the Guide as Highly Confidential, we deny that aspect of her Motion.

At the time of the Hearing, Mulcahy's counsel agreed to certain limitations, on the disclosure of any redesignated materials, to Mulcahy. Although we have found that the PMBOK Primer, the Candidate Notetaker, and the examination questions, are not entitled to a Highly Confidential designation, in an effort to minimize any potentially detrimental effect from disclosing those materials to Mulcahy, and to insulate Mulcahy from future claims that she improperly utilized Cheetah's proprietary materials, we adopt those limitations. Accordingly, the Plaintiff may only view black and white, and not color copies, of the PMBOK Primer, the Candidate Notetaker, and the examination question materials; those materials may only be viewed at the office of Mulcahy's counsel, and in the presence of counsel; no copies of the materials may be made; and no handwritten notations may be taken, or removed from the office of the Mulcahy's counsel.

B. <u>Cheetah's Motion to Compel Production of Documents</u>.

Cheetah seeks to compel Mulcahy to produce documents responsive to its First Set of Document requests, namely, certain financial documents. Under Rule 26(b)(1), Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party * * *." The dispute, here, relates to the application of that Rule. Cheetah maintains that Mulcahy's financial documents

are relevant to the issue of damages, and are, therefore, discoverable, while the Plaintiff contends that they are irrelevant, and not discoverable. According to Cheetah, Mulcahy's Complaint alleges that various elements of Cheetah's course materials have infringed upon her copyright, and that Cheetah has engaged in false and misleading advertising, in violation of the Lanham Act. Mulcahy alleges that she has been damaged as a result of Cheetah's claimed wrongdoing. Accordingly, Cheetah believes that Mulcahy should be required to produce documents relating to the revenues, profits, and expenses, that she has realized through the sale and use of her PMP Exam Prep book.

Mulcahy has objected to such a production of documents, on the ground that such material is irrelevant, since the only remedy that she seeks is the disgorgement of Cheetah's profits, and not her own actual damages. Cheetah argues that this objection "strain[s] credibility when viewed in light of [the Plaintiff's] Amended Complaint," which contains several allegations of direct loss and harm as a result of Cheetah's alleged infringement, and which asks that Judgment be entered for "a recovery of the actual damages sustained by Mulcahy," as a remedy for the alleged violations of the Lanham Act. While Cheetah admits that Mulcahy has stated that she will only seek disgorgement of profits, Cheetah contends that, under the governing law, Mulcahy retains the option of electing statutory

damages, and that the actual amount of her loss, or damage, is relevant to that theory of recovery. Further, Cheetah asserts that, in order to recover under the Lanham Act, Mulcahy must prove actual damages prior to recovering any damage award. As a consequence, Cheetah contends that Mulcahy's financial documents are discoverable. In turn, Mulcahy maintains that, even if she were to elect statutory damages, her financial records would still be irrelevant, and that, in a "reverse palming off" claim under the Lanham Act, she is entitled to a presumption of harm, which obviates her need to prove damages.

The remedies available for copyright infringement are contained in Title 17 U.S.C. §504. The statute provides that an infringer is generally liable "for **either** -- (1) the copyright owner's actual damages and any additional profits of the infringer * * *; or (2) statutory damages * * *." Title 17 U.S.C. §504(a). As for actual damages, the injured party "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Title 17 U.S.C. §504(b). Under that provision, to "establish[] the infringer's profits, the copyright owner is required to present proof of only the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses

and the elements of profit attributable to factors other than the copyrighted work." Id. As for statutory damages, "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work * * * in a sum of not less than $750 or more than $30,000 as the court considers just." Title 17 U.S.C. §504(c). This amount may be increased to $150,000.00 if the copyright owner proves willful infringement, and may be reduced to $200.00, in a case where the infringer proves that it was not aware, and had no reason to believe, that its acts were infringing.

Here, Mulcahy argues that she has elected only to pursue damages under Section 504(a)(1) and, within that provision, only to seek Cheetah's profits, and not Mulcahy's actual damages. Cheetah complains that it should not be made to rely on the Plaintiff's representation that she will only seek such damages. Were that the only issue here, we could well hold Mulcahy to her representation that, under Section 504(a)(1), she could only seek disgorgement, and not actual damages, as a remedy. However, we conclude that we cannot hold Mulcahy to her representation that she will only seek damages under Section 504(a)(1), and will not, at some later time, elect to seek statutory damages under Section 504(a)(2).

The Statute is plain that "the copyright owner may elect, **at any time before final judgment is rendered,** to recover, instead of actual damages and profits, an award of statutory damages." Title 17 U.S.C. §504(c) [emphasis added]. Thus, even if Mulcahy makes an election, at this time, to recover profits under Section 504(a)(1), the statute expressly allows her to change that decision, at any time before a final Judgment is entered. The right to make an election for statutory damages appears to be nearly absolute. For example, in Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 347 n. 5 (1998), the Supreme Court held that an election for statutory damages "may occur even after a jury has returned a verdict on liability and an award of actual damages." See also, Jordan v. Time, Inc., 111 F.3d 102, 104 (11th Cir. 1997)(after Jury had awarded actual damages, the plaintiff "then timely opted for statutory damages."). In fact, in Cotter v. Christus Gardens, Inc., 238 F.3d 420, 2000 WL 1871698 (6th Cir., December 12, 2000) [Table Decision], citing Oboler v. Golden, 714 F.2d 211, 212-13 (2nd Cir. 1983), the Court found that a copyright holder, who had not elected statutory damages, might still do so on remand, or upon the granting of a new Trial. Thus, we conclude that Mulcahy's financial records may be relevant to the issue of her remedies, and must be produced.