Not surprisingly, Mulcahy contends that she would not be "required to show lost profits in order to be entitled to statutory damages should she elect to pursue them," while Cheetah contends that Mulcahy's financial information is relevant to the Court's determination of proper statutory damages. According to Mulcahy, Courts use a number of criteria in determining statutory damages, such that her lost profits are neither an exclusive, nor a necessary factor in evaluating statutory damages. While we do not disagree, we conclude that Mulcahy's argument misses the point. It is clear, from the relevant case law, that "the assessment of" the proper statutory damage award "lies within the Court's sound discretion and sense of justice." Halnat Publishing Co. v. L.A.P.A., Inc., 669 F. Supp. 933, 937 (D. Minn. 1987), citing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952); Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, 912 (D. Conn. 1980). It is equally clear that, in exercising that discretion, "[a]mong the many factors the Court may consider at arriving at a determination of damages are the licensing expenses saved and profits reaped by the defendants from the infringement, the revenues lost by the plaintiff as a result of defendants' infringements, and the infringers' state of mind * * *." Id., see also Tempo Music, Inc. v. Christenson Food & Mercantile Co., 806 F. Supp. 816, 820 (D. Minn. 1992); Cross Keys Publishing Co., Inc. v. LL Bar T. Land & Cattle

Co., Inc., 887 F. Supp. 219, 223-24 (E.D. Mo. 1995), citing Rare Blue Music, Inc. v. Guttadauro, 616 F. Supp. 1528, 1531 (D. Mass. 1985).

Mulcahy has identified several cases in which the Court has not considered the copyright holder's lost profits in reaching the proper statutory damage, and she suggests that, under those cases, her financial records need not be produced, even if she should elect statutory damages. We cannot agree. While it is true that, in Halnat, Tempo Music, and Cross Keys, the Courts did not consider the actual damages of the copyright holder when determining the appropriate level of statutory damages, the fact remains that lost profits is one of the factors that a Court may consider in reaching that issue.[5] As such, even if the Plaintiff did not plan on asking the Court to consider her actual damages, so as to determine the proper statutory award, the Court might still request that evidence, and Cheetah, in making its arguing as to the proper level of statutory damages, has the right to proffer evidence showing the

---

[5]As we pointed out at the time of the Hearing, each of those cases involved a situation where damages and profits could not be calculated, because the alleged infringement was the playing of copyrighted songs, without a license, at small clubs. Therefore, because the Courts did not have any evidence as to either the amount of profits reaped by the infringers, or as to the amount of actual damages sustained by the copyright holders, the Courts based their determination on factors such as the statutory minimum, the willfulness of the infringer, and the relevant licensing costs.

Plaintiff's actual damages or, as Cheetah contends, the absence thereof. We will not act now, based on the Plaintiff's theory as to how damages should be calculated, to prohibit the Court, or the Defendants, from utilizing other factors to address the remedies issue, and we conclude that Mulcahy's financial records are relevant to the damages issue, and are, as a result, discoverable.

While we suspect that our ruling will require Mulcahy to produce all of the documents being sought by Cheetah, there remains some potential that certain documents might be relevant to the issue of damages under the Lanham Act, but not under copyright law, and we proceed to address whether Mulcahy's financial records are relevant to damages under her Lanham Act claims. Once again, we find that they are relevant, and we direct the Plaintiff to produce the requested documents.

Mulcahy has alleged a violation of Title 15 U.S.C. §1125(a), based on a theory of false designation of origin, in which she contends that Cheetah claimed that its course materials were its own original work, rather than hers. According to Title 15 U.S.C. §1117(a), when a violation under Section 1125(a) has been established, the plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits; (2) any damages sustained by the plaintiff' and (3) the costs of the action." The provision reflects that, to prove profits, the plaintiff need only

prove the defendant's sales, and the defendant must prove any deductions. As for damages, "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount" and, if it "find[s] that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

From a plain reading of these provisions, it would appear that the Plaintiff's actual damages are relevant, and thus discoverable. If the Court's award is capped at an amount calculated on the basis of actual damages, then the Court must know what the actual damages are. Further, since the Lanham Act expressly provides that damages for violations of the Act are meant to be compensatory, and not punitive, the issue of damage to Mulcahy, in the form of economic loss, is clearly relevant. Again, the plain language of the Act discloses that Mulcahy's financial documents are relevant, and discoverable However, Mulcahy argues that, under a "reverse palming off" claim, such as the one that she has asserted, there is a presumption of damage, which "renders her lost profits and financial records completely unnecessary to her damages case."

We cannot agree. While the cases cited by the Plaintiff may show that, in a case alleging "reverse palming off," particularly

between direct competitors, that there is a presumption of harm, that presumption goes to a showing that there was a violation of the Lanham Act, not to the issue of what damages should be awarded for that violation. For example, the Plaintiff has cited to Ortho Pharmaceutical Corp v. Cosporophar, Inc., 23 F.3d 690 (2nd Cir. 1994), for the proposition that, in cases involving direct competition -- such as the instant case -- there is a presumption of harm which obviates the need to prove lost profits as a measure of damages. In that case, the Jury had been instructed that, if it found that the defendant had made a false or misleading statement, it was entitled to presume that the plaintiff had suffered damage. The Jury was also instructed, however, that the plaintiff had the burden of proving both the damages that it suffered, and that those damages were caused by the defendant, in order to recover monetary damages. There, the defendant objected to the presumption instruction, claiming that the plaintiff should have the burden of proving both deception, and that the defendant caused actual damage. It was in that context -- that of proving Lanham Act liability -- and not in the context of proving damages arising from the liability, that the Court addressed the existence of a presumption of harm in cases of false designation or of "reverse palming off."

In our view, Mulcahy's argument takes the presumption one step too far. While the presumption of harm may apply to the Plain-

tiff's showing that the Defendants violated the Lanham Act, it does not apply to the separate issue of damages. This conclusion is corroborated by the plain language of Section 1117(a), which clearly provides that a Court must consider the actual damages suffered by the plaintiff in making a proper damage award, and mandates that any recovery for a violation of the Act "shall constitute compensation and not a penalty." Title 15 U.S.C. §1117(a). Thus, even if it were Mulcahy's intent to only seek recompense through the disgorgement of Cheetah's profits, the issue of her actual damages would remain plainly relevant to the issue surrounding her proper remedy. Accordingly, we grant Cheetah's Motion to Compel, and we direct Mulcahy to produce those documents which are responsive to Cheetah's Requests for Production Nos. 15 -17, and which are not otherwise privileged.

C. Cheetah's Motion to Compel Compliance with Subpoena.

In this Motion, Cheetah seeks an Order directing RMC to fully comply with the Subpoena Cheetah served upon it. The Subpoena requested, pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, that RMC designate one or more corporate witnesses to testify as to a number of enumerated topics. The Subpoena also identified several categories of documents for production. RMC has objected to portions of that Subpoena, and has refused to produce

a 30(b)(6) deponent, and to produce documents, for those topics related to the revenues, expenses, and profits of RMC that are related to its sale of products or services designed to prepare students to take the PMP Exam.

For the most part, our foregoing discussion resolves the issue of whether RMC should produce the requested documents. RMC's financial records are the only documents, besides Mulcahy's personal financial records, that are relevant to the issue of damages. Thus, for the same reasons that we required Mulchay to produce her financial documents, we require the same of RMC. However, RMC notes that the Subpoena makes broader requests of it, then were made of Mulcahy, as she was asked only to produce financial information concerning the sale of her books, while RMC is asked to produce financial information concerning its sale of any products, or services, which are designed to prepare students to take the PMP examination. RMC argues that, because Mulcahy's claims against Cheetah are based on infringement of the PMP Exam Prep book, it should only have to produce financial information relative to that book, and not to its other products.

Were Mulcahy's claims limited to copyright infringement, we would agree. However, Mulcahy has also asserted a claim under the Lanham Act, and State law claim based consumer fraud and deceptive trade practices, which extend beyond the PMP Exam Prep book. Chee-

tah argues, and we agree, that, since Mulcahy has claimed that she was harmed by Cheetah's alleged "reverse palming off" of her products as its own, the harm caused by those asserted acts would not be limited to the financial impact on the receipts from the PMP Exam Prep book, but from all of RMC's products, or services, that are designed to prepare students on how to take the PMP examination. Accordingly, that financial information is relevant to the issue of damages, and we grant Cheetah's informal Motion to Compel Compliance with its Subpoena.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion Challenging the Defendants' Highly Confidential Designations Pursuant to Protective Order [Docket No. 61] is GRANTED, in part, and DENIED, in part, as more fully explained in the text of this Order.

2. That Cheetah's Motion to Compel Production of Documents [Docket No. 63] is GRANTED.

3. That the Defendants' Informal Motion to Compel Compliance with Subpoena, is GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE