UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rita Mulcahy,

Civ. File No. 02-791 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Cheetah Learning LLC and
Jeff Schurrer,

Defendants.

---

This case comes before the Court on the parties' cross-Motions for Summary Judgment. Plaintiff brings claims of copyright infringement and of commercial fraud. For the following reasons, the Court grants Plaintiff's Motion with respect to the copyright infringement claims and grants Defendants' Motion with respect to the commercial fraud claims.

**BACKGROUND**

Plaintiff Rita Mulcahy is a consultant in the field of project management. She is the sole owner of RMC Project Management, Inc. and RMC Publications, Inc. (collectively "RMC") through which she offers test preparation materials and courses for the Project Management Institute's Project Management Professional ("PMP") Exam. In particular, Mulcahy created the PMP Exam Prep book to help individuals pass the PMP Exam. The PMP Exam is based on a book of industry standards published by the Project Management Institute called The Project Management Body of Knowledge ("PMBOK"). According to

FILED JUL 29 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Mulcahy, the PMBOK is a dense and academic book that is difficult to understand. In contrast, Mulcahy contends that her book is concise and easy to understand. Mulcahy owns the copyright in PMP Exam Prep, which is now in its third edition.

Defendant Cheetah Learning, LLC ("Cheetah") is a Connecticut company that offers a course called the Cheetah Accelerator Course for the PMP Exam. Like Mulcahy's courses, the Cheetah Accelerator Course is designed to prepare people for the PMP Exam. Michelle LaBrosse is the CEO of Cheetah and with Eric Nielson, personally developed Cheetah's PMP course and course materials. These materials include a teacher's manual, called the Facilitator's Guide, class handouts, referred to as the Candidate Notetaker, sample test questions, and other materials. The Candidate Notetaker consists entirely of selected pages from the Facilitator's Guide.

In March 2002, an instructor for RMC learned from a former student about Cheetah's exam preparation course. The former student had observed many similarities between Mulcahy's materials and Cheetah's. Soon after, an employee of RMC attended one of Cheetah's seminars to determine firsthand the extent of the similarities. Defendant Jeff Schurrer, an employee of Cheetah, was one of the instructors at the seminar and handed out copies of the Candidate Notetaker to participants in the seminar.

As noted in this Court's previous Order, LaBrosse admitted that "various components of Cheetah's materials may have been copied . . . from Mulcahy's book." (May 10, 2002 Order at 2 (citing LaBrosse Decl. ¶ 21).) LaBrosse attempted to remove the allegedly

infringing material, but Mulcahy argues that this attempt failed and that Cheetah's course materials, primarily the Facilitator's Guide and the Candidate Notetaker, are still infringing on her copyright. Accordingly, Mulcahy filed suit against Cheetah and LaBrosse for violations of federal copyright laws, 17 U.S.C. § 106. Subsequently, this Court dismissed the claim against La Brosse, and Mulcahy amended her Complaint to include a claim against Defendant Jeff Schurrer for violations of federal copyright laws. In addition, the Amended Complaint included claims against Cheetah for violations of the Lanham Act, 15 U.S.C. § 1125(a), the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325F.44, and the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69.

Defendants now bring a Motion for Summary Judgment on all four counts of Mulcahy's Amended Complaint. Mulcahy also moves this Court for summary judgment on each of these counts with respect to liability, but not actual damages. In addition, Mulcahy requests a permanent injunction prohibiting Cheetah from infringing on Mulcahy's copyright.[1]

---

[1] The "Amended Notice of Motion and Motion for Partial Summary Judgment and Permanent Injunction" ("Mulcahy's Motion") differs from the "Proposed Order for Partial Summary Judgment and Permanent Injunction" ("Proposed Order") and from the relief sought in the Amended Complaint. Mulcahy requests an order prohibiting Cheetah from "using, publicly displaying, selling, or otherwise distributing [materials] prepared or created between August 2002 and September 2002,"(Am. Notice Mot. & Mot. Partial Summ. J. & Permanent Inj. ¶ 5), but the Proposed Order refers to August 2001, not August 2002, (Proposed Order ¶ 5). Both documents differ from the Amended Complaint in that the Amended Complaint does not specifically limit the injunctive relief to a certain time period. The Court presumes that the dates in the Proposed Order are correct.

**DISCUSSION**

**A. Standard of Review**

Both parties move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that such motions shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995)..

**B. Copyright Infringement**

In Count One, Mulcahy alleges that Cheetah and Schurrer violated federal copyright laws, 17 U.S.C. § 106. To establish a claim under the federal copyright statutes, Mulcahy must prove: (1) ownership of a valid copyright, and (2) copying of its copyrighted work by defendant. See Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992). In response, Defendants make the following three arguments: (1) they claim that Mulcahy

did not obtain a valid copyright because her work unlawfully infringed on the copyright of the PMBOK and The Principles of Project Management, a book created by the Project Management Institute; (2) they claim that Mulcahy is guilty of inequitable conduct before the United States Copyright Office because she failed to acknowledge the allegedly derivative nature of her work; and (3) they argue that Defendant Schurrer did not participate in any activity that would violate federal copyright laws. Both parties move for summary judgment of the copyright infringement claim. The Court grants Plaintiff's Motion because each of Defendants' arguments fails.

1. Validity of Mulcahy's Copyright

A plaintiff is deemed to own a valid copyright if he or she can show that the material is original, that the material can be copyrighted, and that he or she complied with all of the statutory formalities. (May 10, 2002 Order at 6-7 (citing Taylor Corp. v. Four Seasons Greetings LLC, 171 F. Supp. 2d 970, 972 (D. Minn. 2001) (Doty, J.)).However, a person can not own a valid copyright for a work that itself infringes on the copyright of a pre-existing work. In this case, Defendants contend that Mulcahy does not own a valid copyright for her work because her work itself infringes on the copyright of the PMBOK. Specifically, Defendants argue that Mulcahy's work constitutes an unauthorized derivative work based on the PMBOK and The Principles of Project Management.

Defendants can establish that Mulcahy's work infringes on the copyright of the PMBOK and The Principles of Project Management by presenting evidence that "there is a

substantial similarity between the two works at issue." United States v. Washington Mint, LLC, 115 F. Supp. 2d 1089, 1098 (D. Minn. 2000). Defendants must establish that Mulcahy's work and the pre-existing works are substantially similar not only in the general ideas that each work conveys, but also in the manner in which each work expresses those ideas. Moore, 972 F.3d at 945. This is a two-step process: "we first determine whether the details of the works contain objective similarities, and if they do, then we examine the works to ascertain if they are so dissimilar that ordinary, reasonable minds cannot differ as to the absence of substantial similarity in expression." Id.; see also Taylor Corp. v. Four Seasons Greetings, L.L.C., 315 F.3d 1039, 1043 (8th Cir. 2003); Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 729-31 (8th Cir. 2002). The court in Schoolhouse compared two similar tables of information and concluded that the table on defendant's website contained 74% of the topics found in the plaintiff's table. Although the defendant's table contained many of the same topics as the plaintiff's table, the court affirmed the lower court's grant of summary judgment, finding that ordinary and reasonable minds could not find that the defendant's work, when taken as a whole, was substantially similar to the plaintiff's work. Schoolhouse, Inc., 275 F.3d at 729-31.

In this case, Defendants append copies of the pages of the sources that Mulcahy allegedly copied to create her study aid. (See Larus Aff. Exs. I-R.) In each case, Mulcahy has condensed the information contained in the original source. However, the similarities that do exist between Mulcahy's work and the pre-existing sources do not rise to the level

of substantially similar. In fact, Mulcahy's work and the pre-existing sources are less similar than the two sources in Schoolhouse. See id. For example, Defendants reproduce page 30 of the second edition of the PMP Exam Prep and pages 18 and 19 from The Principles of Project Management. (Larus Aff. Ex. Q.) In the PMP Exam Prep, Mulcahy consolidated a list of 14 items from The Principles of Project Management into a list of just 7. Moreover, most, if not all of Defendants' exhibits reveal that in addition to Mulcahy's condensation of the pre-existing sources, Mulcahy offers extensive commentary and study suggestions. Defendants' own evidence illustrates that Mulcahy's work differs dramatically from the pre-existing sources in substance, purpose, presentation, and functionality. Therefore, while Mulcahy's work and the pre-existing sources have many substantive details in common, reasonable minds could not find that Mulcahy's work, when taken as a whole, was substantially similar to the pre-existing work. Thus, the Court finds that as a matter of law, Mulcahy's work does not infringe the copyright of the PMBOK or The Principles of Project Management as an unauthorized derivative work.

Moreover, the fair use doctrine affords the PMBOK and The Principles of Project Management only limited copyright protection. This doctrine limits the exclusive rights of the copyright owner over the use and distribution of the copyrighted material. 17 U.S.C. § 107. The statute provides four factors to consider when determining whether the fair use doctrine justifies the use of copyrighted material:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include –

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

Id. Applying the factors to the copyrighted materials in this case, Mulcahy's work does not infringe on the copyright of the pre-existing materials. The purpose of Mulcahy's work is educational in nature, although her corporation, RMC, is a for-profit commercial entity. In addition, the encyclopedic nature of the PMBOK illustrates that the purpose of the PMBOK and The Principles of Project Management is to provide a comprehensive text for aspiring project management professionals to master. Finally, the effect of Mulcahy's work would likely improve the potential market for and enhance the value of the PMBOK and The Principles of Project Management because Mulcahy's work expressly encourages its readers to purchase and study the PMBOK and other materials like The Principles of Project Management. Therefore, even assuming that Mulcahy's work is substantially similar to the PMBOK or The Principles of Project Management, the limited protection afforded those sources permits Mulcahy to make fair use of them as she has in her course materials. Because Mulcahy satisfies the requirements of the fair use doctrine, her work does not infringe on the PMBOK or The Principles of Project Management.

Next, Defendants argue that Mulcahy failed to inform the United States Copyright

Office of the derivative nature of her work. However, because Mulcahy's work is not a derivative of the PMBOK or The Principles of Project Management, Mulcahy had no obligation to inform the United States Copyright Office of this fact. Therefore, Defendants' second argument likewise fails.

2. Infringement of Mulcahy's Copyright

Using the test for infringement set forth above, the Court finds that Defendants' course materials infringe Mulcahy's copyright. Defendants do not argue that Cheetah's materials are substantially different than Mulcahy's. Instead, they only argue that Schurrer did not personally infringe Mulcahy's copyright because his conduct is not prohibited by federal copyright laws. Again, the Court finds that Defendants' argument has no merit.

To establish that Defendants infringed on her copyright, Mulcahy must either present direct evidence of copying or indirect evidence that Defendants had access to her materials and that Defendants' work is substantially similar to her own. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987); Thimbleberries, Inc. v. C & F Enters., Inc., 142 F. Supp. 2d 1132, 1139 (D. Minn. 2001) (Doty, J.); Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc., 114 F. Supp. 2d 856, 864 (D. Minn. 2000) (Tunheim, J.); Control Data Sys., Inc. v. Infoware, Inc., 903 F. Supp. 1316, 1321 (D. Minn. 1995) (Magnuson, J.).

Mulcahy first offers direct evidence of copying. LaBrosse, the CEO of Cheetah and one of the creators of Cheetah's course materials, admitted that the materials "may have been copied . . . from Mulcahy's book." (May 10, 2002, Order at 2 (citing LaBrosse Decl. ¶ 21).)

In addition, the testimony of Eric Nielson, a former employee of Cheetah who, along with La Brosse, created the questionable materials for Cheetah, indicates that he knew of the substantial similarities between Cheetah's course materials and Mulcahy's PMP Exam Prep and stated that he was worried about infringing Mulcahy's copyright:

> At that time, I told Michelle that I objected to that, that we shouldn't take this material, the Facilitator's Guide, and what we should do, what I suggested to Michelle was that we contact Rita Mulcahy and negotiate with Rita Mulcahy either a wholesale price for either her book or her set of flash cards to use as handouts. So if we were going to hand out material, what I had suggested to Michelle was that we use Rita Mulcahy's material, either her book or her set of flash cards, contact Rita Mulcahy, negotiate a wholesale price for the materials, and use those materials as our handout.
>
> Michelle objected to that. Michelle said, "No. That would add too much to the cost of each course. . . ."

(Nielson Dep. at 74-75.)

In addition to this direct evidence, Mulcahy presents circumstantial evidence to demonstrate that the Cheetah course materials copy her work. In order to prove copying through circumstantial evidence, Mulcahy must show that: (1) Defendants had access to the PMP Exam Prep; and (2) the allegedly infringing materials are substantially similar, both in ideas and expression, to the PMP Exam Prep. See Moore, 972 F.3d at 945; Taylor, 171 F. Supp. 2d at 974. Similarity of expression is evaluated according to the response of an ordinary, reasonable person to the two works. Taylor, 171 F. Supp. 2d at 975.

In this case, Defendants concede that they had access to the PMP Exam Prep. The central question, then, is whether Cheetah's allegedly infringing materials are substantially similar to the PMP Exam Prep to constitute copyright infringement. Based on the evidence

presented to the Court, Cheetah's materials and Mulcahy's work share a substantial similarity. The Court concludes that no reasonable observer could conclude otherwise. Indeed, it appears that entire sections of the PMP Exam Prep are identical or nearly identical to sections of the Candidate Notetaker and Facilitator's Guide. More alarming, however, is the fact that Defendants do not contest Mulcahy's central allegation that the Candidate Notetaker and the Facilitator's Guide copied her work. Instead, Defendants only argue that Schurrer's conduct did not violate federal copyright laws. Accordingly, the Court grants Mulcahy's Motion for Summary Judgment on this claim as it relates to Cheetah without further analysis.

Defendants' argument that Schurrer is entitled to summary judgment fails in part. Defendants contend that because Schurrer's questionable conduct is limited to handing out copies of the Candidate Notetaker to students of the Cheetah prep course, he did not personally infringe Mulcahy's copyright. Mulcahy claims that this conduct constitutes both direct and contributory liability for copyright infringement. While the Court agrees with Mulcahy and concludes that Schurrer was directly liable for infringement, Mulcahy pled only a direct infringement claim and not a contributory infringement claim. Mulcahy cannot now amend her Complaint to include a claim of contributory liability through her arguments in support of summary judgment. At the same time, the record reveals that Schurrer was directly liable for copyright infringement.

Federal copyright laws grant a copyright holder the exclusive rights to reproduce the

copyrighted work, to prepare derivative works based on the copyrighted work, to distribute copies of the copyrighted work by sale or other transfer of ownership, and to display the works publicly. 17 U.S.C. § 106. Moreover, "[p]ersonal participation in the infringing activity will result in direct liability." Little Mole Music v. Spike Inv., Inc., 720 F. Supp. 751, 755 (W.D. Mo. 1989), cited in Pinkham v. Sara Lee Corp., 983 F2d 824, 829 (8th Cir. 1992); Ford Motor Co. v. B & H Supply, Inc., 646 F. Supp. 975, 989 (D. Minn. 1986) (Magnuson, J.) (any defendant in the chain of distribution is directly liable for infringement). Because Schurrer personally participated in the distribution, transfer of ownership, and display of the infringing materials, he subjected himself to direct liability for copyright infringement.

Therefore, the Court denies Defendants' Motion for Summary Judgment with respect to Schurrer. Further, Mulcahy has eliminated all questions of fact on the issue of Schurrer's direct liability. Accordingly, the Court grants Mulcahy's Motion for Summary Judgement against Schurrer.

**C. Remaining Claims**

Mulcahy also alleges that Cheetah violated the Lanham Act, 15 U.S.C. § 1125(a), the DTPA, Minn. Stat. § 325F.44, and the CFA, Minn. Stat. § 325F.69. Even assuming that Mulcahy has standing to bring these claims, but see In Re Minn. Breast Implant Litig., 36 F. Supp. 2d 863, 876 (D. Minn. 1998) (Magnuson, J.) ("Because the present Plaintiffs are not 'commercial entities,' they have no standing, and their Lanham Act claims against 3M are

dismissed."), Mulcahy fails to present evidence sufficient to create a question of fact on each of the elements of her unfair competition claims. Therefore, the Court grants summary judgment on these claims in Defendants' favor.

First, Mulcahy cannot establish the requisite components of a Lanham Act or DTPA claim. The Court uses the same analysis for Lanham Act and DTPA claims. See DaimlerChrysler AG v. Bloom, 315 F.3d 932, 935 n.3 (8th Cir. 2003) (listing cases). These statutes prohibit selling someone else's product as one's own or relabelling or reproducing a work to falsely indicate that work's creator. In addition, these statutes also prohibit falsely representing the nature, characteristics, and qualities of a product. Mulcahy pleads both types of violations, but can support the requirements of neither claim.

To establish a false advertising claim, a plaintiff must prove:

(1) that the defendant made a false statement of fact about its product in a commercial advertisement;

(2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience;

(3) the deception is likely to influence the purchasing decision;

(4) the defendant caused the false statement to enter interstate commerce; and

(5) the plaintiffs have been or are likely to be injured as a result.

Blue Dane Simmental Corp. v. American Simmental Ass'n, 178 F.3d 1035, 1042 (8th Cir. 1999). In this case, Mulcahy alleges that Cheetah falsely represented its product by claiming that it owned a copyright on the course materials. However, Mulcahy's claim must fail

because she presents no evidence that the alleged deception is likely to influence any consumer's purchasing decision. Thus, she cannot establish the third element of a false advertising claim.

Similarly, Mulcahy fails to establish the elements of a false association claim. To establish a claim for "passing off," or "palming off," or false association, Mulcahy must show that Defendants' false designation of origin "created the likelihood of [customer] confusion." United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 743-44 (8th Cir. 2002) (distinguishing the requirement of proving that a false designation actually confused customers and the requirement of proving the likelihood of customer confusion). In this case, Defendants correctly observe that Mulcahy does not allege that there was a likelihood of customer confusion. Accordingly, the Court grants Defendants' Motion with respect to the Lanham Act and the DTPA claims.

To state a claim under the CFA, Mulcahy must present evidence to establish a causal nexus between the alleged misrepresentation and the damages that resulted from that alleged misrepresentation. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 13-15 (Minn. 2001) (stating that the CFA does not require direct proof of actual reliance in all cases and citing with approval Lanham Act cases allowing circumstantial proof of reliance). In this case, Mulcahy offers no evidence, circumstantial or direct, of actual reliance or of an intent to induce potential consumers into reliance through the use of a false representation. Her CFA claim therefore fails.

**CONCLUSION**

The Court concludes that Defendants infringed Mulcahy's. However, Mulcahy has failed to allege the requisite elements of any of the three unfair competition claims that she brings. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion is **DENIED in part** and **GRANTED in part** as follows:
    a. Plaintiff's Motion for Summary Judgment on her copyright infringement claim is **GRANTED**; and
    b. Plaintiff's Motion for Summary Judgment on her unfair competition claims is **DENIED**;
2. Defendants' Motion is **DENIED in part** and **GRANTED in part** as follows:
    a. Defendants' Motion for Summary Judgment on Plaintiff's copyright infringement claims is **DENIED**; and
    b. Defendants' Motion for Summary Judgment on Plaintiff's unfair competition claims is **GRANTED**;
3. Defendants are permanently enjoined from infringing on the exclusive rights of Plaintiff as enumerated in 17 U.S.C. § 106 and as follows:
    a. Defendants are permanently restricted from using, copying, selling, distributing, or displaying the following materials created between August 2001 and September 2002: the <u>Facilitator's Guide</u>, the <u>Candidate Notetaker</u>, <u>Cheetah Notes</u>, and all sample test questions; and

b. Defendants are permanently enjoined from using, copying, selling, distributing, or displaying any materials that are substantially similar to any edition of Plaintiff's PMP Exam Prep.

Dated: July 28, 2003

Paul A. Magnuson
United States District Court Judge